Drew vs. His Creditors.

No. 12,371.

E. C. DREW vs. HIS CREDITORS.

SLAYDEN KIRKSEY WOOLEN MILLS ET ALS., OPPONENTS.

The failure of a party applying for a respite to deposit in the office of the clerk of the court of his domicile, to whom he presents his petition for calling his creditors, a true and exact schedule sworn to by him of all his immovable as well as his debts, warrants the court in rejecting the application. Phelps vs. His Creditors, 36 An. 909.

Where a respite has been refused by the court on the ground of defects in the proceedings the cession of property does not follow under the terms of the Code, but the relief sought by applicant is simply denied, and the case terminates. Id.

APPEAL from the Second Judicial District Court for the Parish of Bienville. *Watkins, J.*

*J. C. Theus* for Plaintiff, Appellant.

*Dorman & Dorman, C. A. Reynolds,* and *W. U. Richardson* for Opponents, Appellees.

Submitted on briefs January 23, 1897.
Opinion handed down March 1, 1897.

STATEMENT OF THE CASE.

E. C. Drew presented to the District Court for Bienville parish a petition to which was annexed a sworn list of his assets and liabilities, with names of his creditors, praying that a meeting of his creditors be called for a day fixed, and that after due proceedings there be judgment granting him a respite for one, two and three years from date. Upon this petition an order was granted for a meeting of creditors to be held on the 28th of February, 1896, before the clerk of the District Court, *ex-officio* notary public. The clerk was directed to give all legal notices. J. A. Dorman was appointed attorney for absent creditors, and judicial proceedings against the person and property of petitioner were ordered to be stayed.

The meeting of creditors ordered was held and the *proces verbal* thereof returned on the 8th of May, 1896. The notary closes the *proces*

*verbal* with the statement that the total amount of liabilities as shown by list of liabilities on file was twelve thousand four hundred and eighty-five dollars. That the number of creditors was one hundred and nine; that out of this number eighty-four appeared either in person or by proxy; appeared and voted, representing in amount twelve thousand five hundred and seventy-one dollars.

That fifty-four of said votes, representing in amount seven thousand five hundred and eighty-one dollars, voted for " granting the respite," and the balance, or remaining votes, thirty in number, representing the amount of four thousand nine hundred and ninety dollars, voted " against granting the respite."

That the majority of votes cast in number and amount was in favor of the respite as prayed for.

On the 15th of May, 1896, twenty-eight of the creditors who had voted against the respite united in a petition to the District Court opposing the homologation of the proceeding, assigning as reasons:

1. That there was no legal order for the same. That the one granted was inadvertently granted by the court without requiring the plaintiff, Drew, to make a proper legal showing.

2. That the schedule presented was not sworn to and there was no legal affidavit to procure the order of court.

3. There was no legal and proper schedule presented, and fictitious values were placed thereon. All in fraud of the rights of opponents.

4. The parties named as creditors were not all creditors, and a great many of them were not creditors for the amount placed on the list. That there were names placed on the list in order to procure them to vote for the respite.

5. The showing made by the debtor was false and fraudulent, giving fictitious values to his property to make a showing of solvency to procure votes in favor of the respite.

6. The debtor is hopelesly insolvent and not entitled to a respite under the law.

7. He has made false and fraudulent offers of payment to some of his creditors to procure their votes in favor of the respite, and has induced them to do so by promising to pay their debts in preference to the others, or to pay fifty cents on the dollar in cash as soon as the respite was granted, thereby purchasing votes in favor of the respite, all in fraud of the rights of opponents.

8. Applicant, shortly prior to the filing of his pretended schedule, fraudulently disposed of a great portion of his property and converted the same into money or evidences of debt, with the view of placing same beyond the reach of his creditors, and has not accounted for same in his pretended schedule—all in fraud of the rights of opponents.

9. Applicant has voted and caused to be voted for his respite fictitious claims through which false and fictitious votes the notary returned his *proces verbal* with a majority in number and amount of creditors as being in favor of the respite to the fraud and injury of opponent.

10. That just prior to the filing of the schedule Drew colluded with and procured attachments to be run on his property, based on fictitious claims and claims secured by mortgage and personal securities, collaterals, pledges, etc., for the purpose of forcing his honest creditors into a compromise of their claims at a large discount, and seeing that said attachments would be set aside and dissolved as in fraud of his real creditors filed this petition for a respite for the purpose of getting his property out of the jurisdiction of the court and the reach of his creditors, and especially of opponents.

11. That Drew fraudulently procured votes for his respite by promise of cash settlement in case his respite was granted by paying the expenses of getting up the affidavits and powers of attorney of the creditors to vote for the respite and by giving security to the creditors voting for the respite and by statements made on circulars and private letters sent out by himself and his attorney, giving a false and fraudulent statement of his financial condition.

12. That Drew obtained credit from opponents Preston & Stauffer to the amount of his indebtedness to them, by making personal statement to them of his assets and liabilities, showing him worth, net, twenty-seven thousand three hundred and fifty dollars, said statement having been dated October 10, 1895, which statement was false and fraudulent, Drew being at that time in an embarrassed condition, if not insolvent.

13. That he obtained credit from all of the opponents by means of statements made by him to the commercial agencies (Bradstreet and Dun), showing his assets above all liabilities to be about twenty-three thousand three hundred dollars, which was false, said statement being made during the month of October, 1893.

14. That it would be against good morals and public policy to permit him to obtain their goods in the fraudulent manner set forth, and then force them to submit to his respite of one, two and three years voted by friendly creditors.

15. That a majority of the *bona fide* creditors in number and amount voting in said meeting was against the granting of the respite—that the Bank of North Louisiana was not a creditor of Drew at the time of the filing of his schedule, or if a creditor for only a small amount. That the claims voted by Mrs. Hobbs, Tooke and Atkins and Windman were not just debts; that they had been extinguished by payment or prescription, if they ever existed. They prayed that the opposition be sustained and the orders granted be set aside. That the meeting of the creditors and proceedings thereon be annulled and set aside. That the debtor be debarred from claiming a respite and he be adjudged insolvent and the respite proceedings be converted into insolvency proceedings, a cession of property ordered and a meeting of creditors be called to elect a syndic.

Plaintiff moved to dismiss the opposition on the ground (1) that opponents were different firms and individuals located in the different States, having no business in common, and their opposition could not be joined or consolidated in one action; (2) because it was filed at Chambers without any order; (3) because the allegations were too vague to give proper notice; (4) it showed no cause of action.

After trial the court rendered judgment sustaining the opposition filed and disallowing the respite asked for; the court further decreed that the applicant, E. C. Drew, was insolvent and ordered him to make a surrender of his property within ten days. It ordered that a meeting of his creditors be held for the purpose of electing a syndic and attending to such other matters as might be necessary in the premises, such as providing for the sale of property, fixing terms of sale, etc. Attorney for absent creditors was appointed and B. M. Manning, sheriff of the parish of Bienville, was appointed provisional syndic. The applicant, Drew, appealed devolutively from the judgment.

The opinion of the court was delivered by

NICHOLLS, C. J. The case before us exhibits forcibly the indefinite and unsatisfactory provisions of our law on the subject of

respite.   Art. 3092 of the Civil Code, while recognizing the right of creditors to make opposition to the homologation of the proceedings of the meeting of creditors, does not specify what the character of the objections to be made should be, nor what judgment should be rendered in the event of their being sustained.   The District Court under the evidence reached the conclusion that the estimate placed by Drew upon his assets was too large and that a comparison of their real value with the amount of his liabilities disclosed the fact that he was not only "unable to satisfy his debts at the moment" (C. C. 3084), but that he was actually "insolvent"—that is, "he was in the situation of a debtor who found himself in the impossibility of doing so."  C. C. 3556, No. XI.  Starting with this premise and acting upon the declaration made in several decisions of this court that in respite proceedings solvency was presumed while proceedings in matters of voluntary or involuntary surrenders were based upon the very reverse theory, the court evidently deduced the consequence that a judgment decreeing a respite in a case where insolvency had been affirmatively shown was utterly inconsistent with the doctrine upon which the whole matter rested.  That therefore the court would not be justified in decreeing the respite "even though a majority of creditors in number and amount" should declare in favor of such a judgment (C. C. 3086), when there were opposing creditors resisting on the ground of insolvency.   When the court reached this conclusion, it went further—it decided that not only was a respite not permissible, but that the logical outcome of the situation was, that the applicant should be ordered to make a surrender of his property and judgment was rendered accordingly.

Philips vs. Creditors, 36 An. 909, presented features in all essential respects similar to those of the present case.   There, as here, the applicant received in favor of his application the vote requisite for obtaining a respite; there, as here, there were opposing creditors resisting, on the ground of the absence of "a true and exact schedule sworn to," and there, as here, the District Court refused the respite, and forced the applicant into a surrender.   This Court affirmed the judgment, in so far as it refused the respite, but reversed it in so far as it forced a cession.   In the opinion rendered, we said:   "The question remains whether the portion of the judgment enforcing the cession and appointing a provisional syndic should be sustained.   The Code, Art. 3098, provides: 'when the

creditors refuse a respite, the cession of property ensues, and the proceedings continue as if the cession had been offered in the first instance.' ''

"This is the only warrant for continuing the proceedings as in case of cession. The law grants to a majority of creditors the option of either granting the respite or of refusing it, and therefore gaining the advantage of a cession of property. They have not availed themselves of the last alternative. They have not refused the respite, and therefore, under the express terms of the law, the condition upon which the cession ensues has not arisen. The respite is denied, not by reason of the refusal of the creditors to grant it, but by reason of defect in the proceedings having the effect to invalidate it. By ordering the matter to proceed as in case of cession, we should act without warrant of law, and, moreover, the defective schedule would be as grave an obstacle to the validity of the proceedings as a voluntary surrender or cession as it is to the respite proceeding." (Burden vs. Creditors, 20 An. 1384.)

The decree of the District Court as it stands is a decree for a "forced surrender," inasmuch as the applicant made no offer to make a cession. This judgment was made in the face of a vote of the applicant's creditors according a respite, and therefore necessarily (for the present, at least) a vote in direct opposition to a forced surrender. The court, in our opinion, was without warrant to issue the decree it did at the instance of the opposing creditors. The circumstances and conditions under which a forced surrender can be ordered are specially provided for by law. Had the present proceedings originated with judgment creditors who had issued executions which had been returned " nulla bona," and had, at their instance, a meeting of the creditors of the debtor been ordered by the court, as provided for in Sec. 1781 of the Revised Statutes, "to determine whether the surrender of his property shall be made to his creditors," the forced surrender would have been refused " if a majority of the creditors in number and amount opposed the surrender " (see the provisos to the section). The court was in error in holding that it was authorized at the instance of the opposing creditors at the time and in manner and form as their application was made to decree a cession of property. Upon an examination of the record and of the allegations of Drew's petition, which he verified by his oath, we find that he did not deposit, as required

by the law, in the office of the clerk of the District Court, a true and exact schedule, sworn to by him, of all his movable and immovable property." The averment of his petition which he swore to was this: " Petitioner herewith presents with this petition a ' sworn ' list of ' his creditors ' and ' list,' as below, of his debts and assets." In point of fact, the list of assets was not sworn to and the assets therein mentioned were, in the opinion of the District Court, overvalued. We are not able to say that its conclusions on the subject of the assets of the applicant were incorrect.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the application of E. C. Drew for a respite be and the same is dismissed, costs of the District Court to be borne by Drew, the applicant; costs of appeal to be paid by the opponents, appellees.